UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ) | **UNDER SEAL** | |
| ) | | |
| V. ) | DOCKET NO.: 3:23-CR-173-RJC | |
| ) | | |
| ) | **GOVERNMENT'S SENTENCING** | |
| ANTONY LINTON STEWART ) | **MEMORANDUM** | |
| _____ ) | | |

COMES NOW the United States of America, by and through its attorneys Dena J. King, United States Attorney for the Western District of North Carolina; Amanda N. Liskamm, Director of the United States Department of Justice, Consumer Protection Branch; and Ryan E. Norman, Trial Attorney at the Consumer Protection Branch, and respectfully requests that the Court: (i) sentence Defendant Antony Linton Stewart ("the Defendant") to a term of imprisonment of 72 months and (ii) order restitution in the amount of $1,104,041.74, as set forth in Paragraph 81 of the PSR. Such a sentence would be sufficient, but not greater than necessary, to fulfill the goals of sentencing given the nature of Defendant's crimes and their impact on his victims.

## DEFENDANT'S CRIMES

From in or about 2010 through at least in or about August 2016, the Defendant led a fraudulent lottery scheme in which he and his co-conspirators targeted victims in the United States. The Defendant contacted victims of the scheme by telephone and told them that they had won money and other prizes in a sweepstakes or lottery. The Defendant instructed victims to send thousands of dollars for fees or other expenses to release their purported lottery winnings. As a result, victims sent money to individuals in the United States and in Jamaica, who then forwarded money at the Defendant's direction. The Defendant contacted victims repeatedly with additional requests for money for as long as the victim could be persuaded to send additional money. There

1

was no lottery and no winnings were paid. Rather, the Defendant and his co-conspirators fraudulently kept the victims' money for their own benefit.

## PROCEDURAL HISTORY

In December 2019, the grand jury charged the Defendant in a nine-count indictment with conspiracy to commit mail and wire fraud and conspiracy to commit money laundering. In October 2022, the Defendant was extradited from Jamaica and had his initial appearance in the Western District of North Carolina. On August 3, 2023, the Defendant pleaded guilty to one count of conspiracy to commit mail and wire fraud.

Following the Defendant's guilty plea, a final Presentence Investigation Report (PSR) was prepared. *See* Doc. 13. The government filed no objections and concurred with both the findings set forth in the PSR and Sentencing Guidelines calculation of 78-97 months.

## SECTION 3553(a) ANALYSIS

In determining the appropriate sentence, "a district court must begin by correctly calculating the applicable Guidelines range." *United States v. Evans*, 526 F.3d 155, 160 (4th Cir. 2008). The advisory Guidelines are "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice. . . . [I]t is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007). "[A] Guidelines sentence will usually be reasonable, because it reflects both the Commission's and the sentencing court's judgment as to what is an appropriate sentence for a given offender." *Id.* at 351.

Yet, in *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Guidelines are not mandatory, but advisory in every case. The Court is permitted to tailor the

ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Guidelines advisory sentence. Ultimately, however, the appropriate sentence is for the District Court to determine based on the factors enumerated in 18 U.S.C. § 3553(a), and "any sentence, within or outside of the Guidelines range, as a result of a departure or of a variance, must be reviewed by appellate courts for reasonableness pursuant to an abuse of discretion standard." *United States v. Diosdado-Star*, 630 F.3d 359, 365 (4th Cir. 2011).

In this case, notwithstanding the Sentencing Guidelines calculation, and for the reasons that follow, the government joins the Defendant in recommending a downward variance of 6 months from the bottom of the guidelines. Thus, the government asks that the Court impose a sentence of incarceration of 72 months.

I. **Analysis Under 18 U.S.C. § 3553(a)**

The 18 U.S.C. § 3553(a) factors the Court must consider include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct; (4) the need to protect the public from further crimes of the defendant; (5) the need to provide the defendant with needed education or vocation training, medical care, or other correctional treatment in the most effective manner; (6) the guidelines and policy statements issued by the Sentencing Commission; (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (8) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

3

### A. Nature and Circumstances of the Offense and Need to Provide Just Punishment

There is no question that the Defendant engaged in a serious offense that caused harm to many elderly American victims. The fraudulent sweepstakes deceived victims into unwittingly giving away multiple thousands of dollars, affecting them not only financially but also mentally. The effects on the Defendant's victims are no more evident than in one victim's impact statement in which she describes her "mental anguish" having been the victim of a scam and how losing a significant portion of her late spouse's and her savings affected her marriage and her trust in others. Victim Impact Comments [Doc. 13, Attachment 1]. So, too, is the impact of the Defendant's crime strongly felt in another victim's statement in which she writes that her deceased loved one "worried constantly" about her finances and personal safety after being victimized by the Defendant and his co-conspirators. *Id.*

The methods by which the Defendant committed his crimes were extensive in scope, creative in nature, and psychologically harmful in the way they sowed seeds of mistrust in vulnerable victims. As the Defendant has admitted by way of the statement of relevant conduct, he recruited at least three other people to collect money from victims in the United States and transmit or transport it to him in Jamaica. One co-conspirator brought the Defendant large amounts of cash on visits to Jamaica and used bank accounts belonging to relatives to collect victim money. The Defendant had another co-conspirator meet an associate of his in person to hand him three cashier's checks for $100,000 each, which had been mailed to the co-conspirator by an elderly victim.

The Defendant was not above communicating directly with victims by telephone. When doing so, he repeatedly harassed them to induce them to pay money. At times, he posed as a Federal Bureau of Investigation (FBI) employee or stated that the call to his victims was being monitored

4

by the Internal Revenue Service (IRS). These tactics served only two purposes—to instill fear in his vulnerable victims and coerce compliance. Accordingly, the Defendant's crime rightly deserves to be punished.

### B. Adequate Deterrence to Criminal Conduct

A sentence of 72 months' imprisonment would meet the deterrence goals of 18 U.S.C. § 3553(a). First, as to specifically deterring the Defendant, to date, he has been subject to extradition to the United States. Though delayed by a multi-year effort to locate him, his arrest and extradition proved unavoidable. Importantly, following up this extradition by 72 months of imprisonment completes the message that fraudulent schemes such as the one he undertook will be taken seriously and punished accordingly.

A 72-month term of imprisonment also sends a message of general deterrence to others who would consider engaging in similar crimes. The Fourth Circuit has explicitly recognized the importance of incarceration for defendants convicted of white-collar crimes such as tax evasion, theft, fraud and embezzlement. *See United States v. Engle*, 592 F3.d 495, 501 (4th Cir. 2010). Indeed, where offenses are lucrative and difficult to detect and punish, general deterrence is key. Here, a sentence imposing incarceration sends a signal to those abroad that should they decide to victimize Americans, they will not be beyond the reach of U.S. law enforcement. In this way, a 72-month sentence also promotes necessary respect for the law both in the United States and abroad.

### C. Need to Avoid Unwarranted Sentencing Disparities

In addition to the reasons stated above, the jointly recommended sentence of 72 months would be consistent with the sentences this Court imposed on similarly situated, co-conspirator defendants involved in the very same fraud scheme. The Court will no doubt recall that three of

the Defendant's co-conspirators in this fraudulent scheme have previously been sentenced in the Western District of North Carolina. Co-Conspirator Dominic Smith (Docket No. 3:14-cr-107-RJC) was sentenced in October 2015 to a 27-month term of imprisonment. Co-conspirator Felecia Lindo (Docket No. 3:15-cr-224-RJC) was sentenced in February 2017 to 24 months of imprisonment. Finally, co-conspirator Shashana Smith (Docket No. 3:16-cr-313-RJC) was sentenced in September 2017 to 24 months of imprisonment.

The government believes the recommended sentence of 72 months appropriately balances the interest of holding the defendant accountable for his role in the scheme against the interest of not creating an unwanted sentencing disparity amongst co-conspirators. On the one hand, a 72-month term of imprisonment recognizes that as the leader/organizer of the scheme, the Defendant deserves a longer sentence than the co-conspirator money mules he recruited. If imposed, the sentence would reflect a term of imprisonment of more than twice the length of the prison term given to Dominic Smith, who collected the lion's share of the victim money at issue (Smith was ordered to pay $724,408.79 in restitution). On the other hand, a 72-month sentence does not so disproportionately outweigh the sentences of the Defendant's co-conspirators that an unfair disparity can said to have been created.

## II. Conclusion

For the foregoing reasons, the government requests that the Court: (i) sentence the Defendant to a term of imprisonment of 72 months and (ii) order restitution in the amount of $1,104,041.74 as set forth in Paragraph 81 of the PSR.

Dated: January 14, 2025

    Respectfully submitted,

    DENA J. KING
    United States Attorney

    BRIAN M. BOYNTON
    Principal Deputy Assistant Attorney General
    United States Department of Justice
    Civil Division

    BURDEN H. WALKER
    Acting Deputy Assistant Attorney General
    United States Department of Justice
    Civil Division

    AMANDA N. LISKAMM
    Director
    Consumer Protection Branch
    United States Department of Justice
    Civil Division

BY:   */s/ Ryan E. Norman*
      Ryan E. Norman
      Trial Attorney
      Consumer Protection Branch
      U.S. Department of Justice
      P.O. Box 386
      Washington, D.C. 20044
      (202) 532-4110
      ryan.norman@usdoj.gov
      Attorney for the United States of America

## ARTIFICIAL INTELLIGENCE CERTIFICATION

Pursuant to the Court's June 18, 2024, Standing Order, which was published to the Bar of the Western District of North Carolina on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, Fast Case, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 14th day of January, 2025.

                                              */s/ Ryan E. Norman*
                                              Ryan E. Norman
                                              Trial Attorney
                                              Consumer Protection Branch
                                              U.S. Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Government's Sentencing Memorandum with the Clerk of the Court for the United States District Court, Western District of North Carolina, using the CM/ECF system, which will electronically notify all counsel of record who have consented to accept service by electronic means, including:

S. Frederick Winiker, III
*Counsel for the Defendant*

Dated: January 14, 2025

*/s/ Ryan E. Norman*
Ryan E. Norman
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, D.C. 20044
(202) 532-4110
ryan.norman@usdoj.gov
*Attorney for the United States of America*