**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:23-cr-00173-KDB-DCK**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| ) | |
| ANTONY LINTON STEWART, ) | |
| ) | |
| DEFENDANT. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's Pro Se Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 25] and the Government's Motion to Dismiss [Doc. 33].

I.     **BACKGROUND**

A.     **Offense Conduct**

Beginning in or about 2010 through at least in or about August 2016, Defendant Antony Linton Stewart ("Defendant"), a citizen of Jamaica, knowingly and intentionally defrauded and recruited others to defraud individuals in the United States through a lottery telemarketing scheme operated from Jamaica. [Doc. 13 at ¶¶ 16-17: Presentence Investigation Report (PSR)]. Defendant contacted victims of the scheme by telephone and told them they had won money and other prizes in a sweepstakes or lottery. He instructed the victims to send thousands of dollars for fees and other expenses to release their purported winnings. [Id. at ¶ 17]. Victims sent money to Defendant's co-conspirators in the United States and Jamaica, who then forwarded the money at Defendant's direction. [Id.]. Defendant persisted in contacting the same victims for as long as

they could be persuaded to send more money. There was no lottery and no winnings were paid; rather, Defendant and his co-conspirators kept the money for their own benefit. [Id.].

## B. Indictment and Guilty Plea

On December 17, 2019, a grand jury charged the Defendant with one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. §§ 1349 and 2326(2)(A) (Count One), seven counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts Two through Eight), and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count Nine). [Criminal Case No. 3:19-cr-00380-RJC-SCR,[1] Doc. 3: Bill of Indictment]. Defendant agreed to plead guilty to Count One and the Government agreed to dismiss the remaining counts. [-380, Doc. 16 at ¶¶ 1-2: Plea Agreement]. The parties agreed that the base offense level was 7, U.S.S.G. §2B1.1(a)(1), and that the loss amount was between $550,000 and $1,500,000, resulting in a 14-level offense level increase, U.S.S.G. §2B1.1(b)(1)(H). [Id. at ¶ 8(b)]. They also agreed to recommend five, two-level increases for (1) the location of the fraudulent scheme, (2) because the offense involved 10 or more victims, (3) because the offense involved a misrepresentation that the Defendant was acting on behalf of a government agency, (4) because the offense involved vulnerable victims, and (5) because of Defendant's role in the offense. [Id., id.]. The parties also agreed to jointly recommend a downward variance and that the Defendant receive a sentence of no greater than 72 months' imprisonment. [Id., id. at ¶ 8(f)].

Notably, in Paragraph 7, Defendant acknowledged his awareness that:

> **[T]he Court**: (a) will consider the advisory *United States Sentencing Guidelines (U.S.S.G.)* in determining the sentence; (b) has not yet determined the sentence, and any estimate of the likely sentence is a prediction rather than a promise; (c) has the final discretion to impose any sentence up to the statutory maximum for each count; and (d) **is not bound by recommendations or**

---

[1] The original criminal proceeding, which is hereinafter cited as "-380" was dismissed on January 27, 2025, as further set forth below.

> **agreements by the United States. Knowing this, the defendant understands that the defendant may not withdraw the plea as a result of the sentence imposed.**

[Id. at ¶ 7 (emphasis added)].

A plea hearing was set for July 26, 2023. As part of this plea hearing, the Government reviewed the terms of the plea agreement, including the parties' joint sentencing recommendations and particularly the parties' joint recommendation that Defendant receive a sentence no greater than 72 months. [-380, Doc. 20 at 11-13: Plea Tr.]. The Magistrate Judge noted that, relative to Count One, the Indictment cited to *inter alia* 18 U.S.C. § 2326(2)(A), which provides for enhanced penalties, and queried what the maximum penalty was for the charged conduct. [Id., id. at 15-16]. The Government reiterated that, "the government is in fact not seeking enhanced penalties and there's a joint recommendation for a sentence of less than 72 [months]." [Id., id. at 17]. At defense counsel's request, the plea hearing was suspended so that the parties could confer and potentially proceed under a bill of information. [Id., id. at 17-18].

On July 31, 2023, a Bill of Information and plea agreement were filed and the matter proceeded under Case No. 3:23-cr-00173. [Doc. 1]. The Bill of Information charged Defendant with one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349 (Count One), omitting the reference to § 2326(2)(A). [Id.]. The plea agreement was essentially identical to the original agreement and included the same Paragraph ¶ 7 and the same joint sentencing recommendations, including the parties' agreement to jointly recommend a sentence of no more than 72 months. [See id. at ¶¶ 7, 8(i)].

Defendant's plea hearing on the Bill of Information was conducted on August 3, 2023. [Doc. 6: Acceptance and Entry of Guilty Plea]. Before beginning, the Defendant was placed under oath. [Doc. 28 at 9: Plea Tr.]. The following exchange occurred:

THE COURT: So, Mr. Stewart, I said earlier I'm going to ask you some questions about your plea. The Court is charged with ensuring that you are knowingly and voluntarily making that plea so we ask a series of questions to determine whether the plea is being knowingly and voluntarily made. Since this is a very important proceeding, I am going to not only ask you the questions, you can just listen to me, but if you prefer, you can also follow along with me. I've published the questions. It's right in front of you and it's also to the side of you on the big screen.

So, sir, do you understand that you're under oath and that you're required to give truthful answers to the questions I'm about to ask?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that if you give false information under oath, you may be prosecuted for perjury or false statement?

THE DEFENDANT: Yes, ma'am.

[Id. at 9].

The Magistrate Judge reviewed the charge, and the Government reviewed the maximum and minimum penalties for a conviction under 18 U.S.C. § 1349. [Doc. 28 at 4-6, 10-11: Plea Tr.]. During the plea colloquy, the Defendant affirmed among other things that he (1) had spoken with his attorney about how the U.S. Sentencing Guidelines might apply to his case; (2) understood that the district judge would not be able to determine the applicable sentencing guidelines range until after a presentence report has been prepared and has an opportunity to comment on it; (3) understood that in some circumstances he could receive a sentence that is higher or lower than that calculated by the guidelines; and (4) understood that if the sentence is more severe than expected or the Court does not accept the government's sentencing recommendation, he would still be bound by his plea and that he would have no right to withdraw it. [Id. at 11-12]. Defendant testified that he was in fact guilty of the crime charged. [Id. at 13].

The Government then summarized the terms of the plea agreement, including the parties' agreement to jointly recommend that the Defendant be sentenced to no more than 72 months' imprisonment and the Defendant's waiver of his right to appeal except for claims of prosecutorial misconduct. [Id. at 15-16]. The Magistrate Judge affirmed Defendant's agreement to waive his rights to appeal his conviction and sentence and to challenge his conviction and sentence in post-conviction proceedings. [Id. at 16-17]. Defendant testified that no one had threatened, intimidated, or forced him to enter a guilty plea and that no one made him any promises of leniency or a light sentence to induce him to plead guilty. [Id. at 20]. Defendant further testified that he understood all parts of the proceedings and had no questions. [Id. at 21]. And defense counsel stated that he had reviewed each term of the plea agreement with the Defendant and was satisfied that he understood those terms. [Id.]. The Magistrate Judge accepted Defendant's guilty plea, finding it knowingly and voluntarily made. [Id. at 22]. The Magistrate Judge also found that Defendant understood the charge, potential penalties, and consequences of his plea. [Id.]. Finally, the Magistrate Judge advised Defendant that he had 14 days to file any written objections to her recommendations. [Id.].

### C. Defendant's Sentencing

Before sentencing, a probation officer prepared a PSR. [Doc. 13]. In keeping with the joint recommendations of the plea agreement, the probation officer recommended a total offense level of 28, which included a base offense level of 7, increased by 14 for the loss amount and the five, two-level enhancements, and reduced by three levels for acceptance of responsibility. [Id. at ¶¶ 41, 43-44, 48-50]. With a criminal history category of I, the recommended guidelines range was 78 to 97 months. [Id. at ¶¶ 54, 71].

At sentencing, defense counsel explained the reasoning behind the jointly recommended 72-month sentence. [Doc. 29 at 4-7: Sentencing Tr.]. That is, he explained that the Defendant was born in Jamaica, a country plagued by deep poverty and violent gangs, and that Defendant will be deported back to Jamaica after he completes his sentence. [Id. at 4]. Counsel further explained that Defendant was "not the kingpin" of the conspiracy, but only "another cog in the wheel" who did not really profit from the conspiracy. [Id. at 5-7, 9]. Counsel explained, however, that Defendant could not offer substantial assistance because he will be deported back to Jamaica after completing his sentence, where he would have risked his life had he offered such assistance. [Id. at 5-6]. The Court declined to vary downward and accept the parties' 72-month sentencing recommendation, reasoning that there would be no unwarranted sentencing disparity should it impose a greater term than that recommended by the parties and that Defendant was not entitled to any further benefit for his asserted relative role in the offense. [Id. at 17-20]. The Court sentenced Defendant to a term of imprisonment of 84 months. [Id. at 19-20; Doc. 23 at 2: Judgment]. Defendant did not file a direct appeal.

D.       Defendant's Motion to Vacate

Defendant timely filed the pending motion to vacate.[2] [Doc. 25]. Defendant asserts numerous claims of ineffective assistance of counsel,[3] which center on his counsel's performance in connection with his guilty plea. Defendant claims that he received ineffective assistance of counsel because his attorney (1) failed to explain the plea agreement negotiation process, particularly that the Government's offer of a 72-month sentence was "in fact a behind-the-scene's [sic] deal" that would not be part of the written plea agreement; (2) coerced Defendant into

---

[2] On September 18, 2025, this matter was reassigned to the undersigned on the retirement of Senior District Judge Robert J. Conrad.

[3] These claims are reordered and regrouped here for the sake of clarity and efficiency.

pleading guilty based on the promise of a 72-month sentence and the failure to advise the Defendant that he would be subject to the sentencing guidelines; (3) failed to ensure that Defendant's plea colloquy responses were knowing and voluntary, particularly Defendant's response that he was satisfied with the services of his attorney such that Defendant may later be foreclosed from challenging his counsel's performance and Defendant's response that he was made no promises of leniency in exchange for pleading guilty; (4) failed to advise the Defendant regarding his right to withdraw his guilty plea and failed to move the Court to withdraw the plea; (5) failed to advise the Defendant that he would have no right to withdraw his guilty plea if the Court declined to adopt the parties' recommendation and Defendant was sentenced to more than 72 months; (6) failed to preserve Defendant's right to appeal his sentence, to discuss appealable issues with Defendant, and to file a notice of appeal despite Defendant's express request that he do so; and (7) counsel's multiple errors rendered his assistance ineffective. [Doc. 25 at 4-16]. Defendant also asserts a claim of prosecutorial misconduct based on the Government's alleged failure to ensure that the parties' agreement to a 72-month sentence was part of the written plea agreement. [Id. at 17].

For relief, Defendant asks that he be entitled to a direct appeal and counsel, as well as a hearing before relief is denied. [Id. at 24]. Notably, in his motion, Defendant does not ask to vacate his plea agreement, for a trial, or to plead anew. [See id.].

The Court ordered the Government to respond to Defendant's § 2255 motion. [Doc. 27]. In response, the Government moved to dismiss Defendant's § 2255 motion and submitted a Declaration of Defendant's attorney, S. Federick Winiker, III, in which Winiker swore that Defendant declined Winker's offer to file a notice of appeal on his behalf. [Doc. 32-33, ¶ 9: Winiker Dec.]. The Government argues that Defendant has not alleged facts consistent with the

record that, if proved, would establish that Winiker's performance was constitutionally deficient. [See id.]. Defendant responded to the Government's motion to dismiss.[4] [Doc. 35].

Because a credibility determination was necessary to determine one or more of Defendant's ineffective assistance claims, the Court ordered an evidentiary hearing. [See Doc. 36].

## II. EVIDENTIARY HEARING

At the hearing, the Government presented Winiker's testimony. Winiker testified as follows. Winiker has practiced law for over 30 years and represented approximately 200 clients in federal court, the majority of whom he represented through the plea process. Winiker was appointed to represent the Defendant after the Defendant's initial appearance. Winiker first met with the Defendant while Defendant was housed at the Mecklenburg County Jail. Although Defendant initially had difficulty understanding co-conspirator liability, which Winker addressed, Winiker had no concerns regarding their ability to communicate, Defendant's ability to understand and speak English, or Defendant's understanding of the charges against him.

Winiker reviewed discovery with the Defendant and explained the plea and sentencing processes. Specifically, Winiker explained how plea bargaining and negotiation with the Government would work. Winiker recalled that he received a plea offer reduced to a plea agreement from the Government early on before he and the Defendant had fully reviewed discovery, discussed the case, or determined if there were any defenses. Winiker sent the Defendant a copy of the proposed plea agreement for Defendant to review and ask any questions about its terms. Winiker, however, rejected it on Defendant's behalf because it was too early to

---

[4] It appears that Defendant purports to assert new claims in his reply. [See Doc. 35 at 8-9, 13]. For instance, Defendant contends that Winiker "had a duty to get [Defendant] the best plea deal possible" and that Defendant seeks to rescind the plea agreement and challenge his conviction "based upon a [R]ule 11 error." [Id.]. To the extent Defendant asserts new claims for relief in his reply brief, these claims are improperly presented, untimely, and summarily dismissed. See infra at 15; 28 U.S.C. § 2255(f)(1).

consider the Government's offer.  Winiker recalled that discovery was voluminous, and he sought to identify key pieces in the case, including the anticipated testimony of two cooperating witnesses that informed Defendant's co-conspirator liability.

Through his review of discovery, Winiker was unable to identify any possible defenses that raised a substantial likelihood of prevailing at trial.  Winiker discussed the lack of defenses with the Defendant.  After reviewing discovery, Winiker advised the Defendant that there was enough evidence to go to a jury in this case, that he might lose if he proceeded to trial, and that he would face a higher sentence without a plea agreement.  Winiker explained to the Defendant that he had the option of going to trial rather than taking a plea offer and the risks and benefits of going to trial.

Winiker discussed the difference between Rule 11(c)(1)(B) and (c)(1)(C) with the Defendant.[5]  He advised that he would try to get the Government to agree to recommend the lowest sentence possible and make convincing arguments to the Judge at sentencing.  Winiker explained the sentencing guidelines and the guidelines range Defendant would face based on the charges and the allegations the Government would be making in the plea agreement.  Defendant questioned why he would be facing a much higher sentence than his co-defendants who had already pled and served their sentences.

After reviewing discovery and discussing and arriving at a strategy with the Defendant, Winiker contacted the Government about reaching an agreement pursuant to which the Defendant could potentially face a below-the-guidelines sentence.  After these discussions, the Government offered the second plea agreement, which Defendant ultimately accepted.  When Winiker received

---

[5] Under Rule 11(c)(1)(B), the Court is not bound by a sentencing recommendation in a plea agreement accepted by the Court.  A recommendation or request made under Rule 11(c)(1)(C), however, does bind the Court once the Court accepts the plea agreement

9

this agreement, he gave the Defendant a copy and summarized the key parts of the agreement, including the fact that the sentencing guidelines would be calculated in connection with any plea Defendant might take, Defendant's predicted guidelines range, and that the Court had the power to vary from the advisory guidelines range. Winiker also explained the presentence report process to the Defendant. Regarding Paragraph 7 of the plea agreement, Winiker summarized the information therein, but did not review it *verbatim*. Winiker does not recall the Defendant having any difficulty understanding the contents of Paragraph 7.

Winiker and the Defendant had "open and candid" conversations about the plea and sentencing aspects of the case. Winiker never pressured the Defendant to plead guilty. Winiker discussed the guidelines and the fact that the Court might make a variance from the guidelines. Relative to the plea, Defendant questioned whether the 72-month joint recommendation meant that he would actually be sentenced to 72 months' imprisonment. Winiker advised that this was a joint recommendation, that the sentence could be more or could be less, and that "at the end of the day" the Judge would determine Defendant's sentence at sentencing. There were no "behind-the-scenes" deals between the parties not contained in the plea agreement.

Winiker prepared the Defendant for the Rule 11 hearing. Winiker read the plea colloquy questions aloud and carefully reviewed them with the Defendant. Winiker wanted to ensure that the Defendant had an opportunity to ask Winiker any questions regarding the plea colloquy questions in advance of the Rule 11 hearing. Winiker explained to the Defendant that the Court would be directly asking the Defendant these questions. Winiker further explained that the plea colloquy questions are "yes" or "no" questions and that if Defendant had more extensive answers to offer, they needed to review them before the hearing. Although he did not tell Defendant he would be under oath, Winiker believed that the Defendant understood the importance of answering

the questions honestly. After the first Rule 11 hearing, which was suspended, Defendant did not indicate any desire not to go through with his guilty plea.

At sentencing, in keeping with the plea agreement, Winiker and the Government advocated in support of the 72-month sentence. Despite the parties' arguments, however, the Court imposed an 84-month sentence. Winiker did not attempt to withdraw Defendant's guilty plea after the sentence was rendered because he did not believe there were any procedural grounds to do so. Within minutes of the imposition of the sentence, Winiker met with the Defendant in a holding cell and asked him whether he wanted Winiker to file a notice of appeal, advising Defendant that the grounds for appeal did not need to be articulated in the notice. Defendant responded that he did not want to appeal. Winiker recalled that Defendant had been moved out of Mecklenburg County before the judgment was entered. Winiker did not specifically recall meeting with the Defendant over video after he had been moved, but Winiker testified that it was his practice to do so to check in with his clients and see if they want to appeal.

After the judgment and statement of reasons were entered, Winiker sent Defendant a copy of these documents and advised him that he had fourteen days to either contact Winiker or the Clerk of Court if Defendant wished to file a notice of appeal. Winiker did not hear from the Defendant until several months later when the Defendant asked for copies of certain paperwork. Winiker never refused to file a notice of appeal for the Defendant.

In response, Defendant, who was represented by appointed counsel, offered his own testimony, which differed markedly from Winiker's. Defendant testified that he graduated from high school and can understand and speak English. Defendant testified that, in preparation for the hearing, he reviewed some materials, including case law, that he believed would assist him at the hearing. Defendant testified that about a month after their initial introduction and discussion,

Winiker returned to the Defendant with the first proposed plea agreement, which included the recommended sentence of 84 months. Defendant declined this plea offer. Defendant testified that, when Winiker returned sometime later with the second plea offer, Defendant also rejected it. Defendant was reading a book at the time called Busted by the Feds, which discussed the difference in a Rule 11(c)(1)(B) and (c)(1)(C) plea agreement. Defendant testified that he noted to Winiker that the second plea offer included a Rule 11(c)(1)(B) sentencing recommendation and that he wanted a Rule 11(c)(1)(C) agreement. Defendant testified that he told Winiker that he wanted a binding plea and that Winiker told the Defendant that the Government would not agree to that, but that Winiker would contact the Government and get back to the Defendant. Defendant later testified, however, that he never actually reviewed the second plea offer, but rather called his family to complain about Winiker's services at that time.

Defendant testified that Winiker returned a few months later with the same plea offer and advised the Defendant to take it. Defendant testified that Winiker told him that he, Winiker, used to be a prosecutor and Judge Conrad "always [went] with … anything [Winiker] put before" him. Based on this advice, Defendant was "really locked … in" and signed the second plea offer. Defendant testified that, when he signed the agreement, he believed he would be sentenced to 72 months.

When reviewing the executed second plea agreement on cross examination, particularly Paragraph 8's explicit reference to sentencing recommendation being made pursuant to Rule 11(c)(1)(B), Defendant testified that he did not understand (c)(1)(B), only (c)(1)(C). Defendant further testified that "[he wasn't] interested in reading about the rule that actually appeared in the document [he] signed … [b]ecause [he] was going by counsel[']s] advice." On cross examination, Defendant testified that Winiker told him not to worry about the 72-month recommendation

because Winiker was "going to try to go under it" and that "the Court always goes along with what [Winiker] says." Defendant testified that Winiker never reviewed Defendant's guidelines range because Winiker never knew where Defendant fell in the range. Defendant testified that Winiker also failed to explain how a trial would work or any possible defenses Defendant might have had.

Defendant also testified that Winiker never reviewed the Rule 11 questions with him. Rather, Defendant claims Winiker told him not to worry about the questions because Winiker would be right there beside him. Defendant testified, however, that Winiker did advise him on one particular question. That is, Winiker told him to say "no" when asked whether anyone had made any promises of leniency or a light sentence in exchange for pleading guilty because if Defendant had said "yes" the plea agreement would have been "take[n] off." Defendant testified that if he had full knowledge and understanding of the plea agreement and negotiation process, he would have taken his chances with trial.

Defendant testified that at the second Rule 11 hearing, despite swearing to tell the truth, he lied to the Court when asked whether he had spoken with his attorney about how the sentencing guidelines might apply to his case based on his counsel's advise and even though he had not spoken with his attorney about the application of the guidelines. Defendant further testified that he similarly lied to the Court at the Rule 11 hearing when asked if he understood that he would still be bound by his plea even if his sentence were more severe than expected or if the Court does not accept the sentencing recommendation. Defendant also testified that he said "yes" when asked about whether he had enough time to discuss possible defenses with his attorney even though Winiker never discussed possible defenses with Defendant.

Defendant testified that when Defendant reviewed the PSR before sentencing, he asked Winiker about the 78- to 97-month guidelines range noted therein. Winiker told the Defendant not

13

to worry about it and that Winiker was going to try to get a sentence below 72 months. Defendant testified that at the sentencing hearing, the Government wanted Defendant to receive a 72-month sentence and "talked for [Defendant] more than [his own] counsel."

Defendant agreed that he and Winiker spoke in the holding cell immediately after the sentencing hearing but claims that he told Winiker that he needed an appeal and that Winiker told him that he was going to have some coffee and "would get back to [him]." Defendant did not learn that Winiker had not filed an appeal until Defendant received a letter advising that Winiker was no longer his attorney.

At the instant hearing, Defendant acknowledged that the Government did a "fair job" and advocated for the 72-month sentence. Defendant testified that he did not have a copy of the plea agreement when he prepared his § 2255 motion but was going off his memory of what happened in 2023. Defendant testified that he is seeking the agreement that he was promised, that is, a sentence of 72 months.

## III. STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. "[W]hen a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary

to resolve the claims," an evidentiary hearing is necessary.  United States v. Mayhew, 995 F.3d 171, 176-77 (4th Cir. 2021) (citing United States v. Witherspoon, 231 F.3d 923, 926-27 (4th Cir. 2000)).

## IV.    DISCUSSION

"Habeas corpus petitions must meet heightened pleading requirements."  MacFarland v. Scott, 512 U.S. 849, 856 (1994).  A motion under § 2255 must "specify all the grounds for relief available to the moving party" and "state the facts supporting each ground." R. Governing § 2255 Proceedings 2(b).  The "grounds for relief," "the facts supporting each ground," and the "relief requested" must appear in the motion.  Id.  In this regard, a habeas petitioner may not raise new grounds for relief in a response or reply.  Brack v. United States, Nos. 1:23CV547 & 1:08CR471, 2015 WL 5712385, at *3 (M.D.N.C. Sept. 29, 2015) (holding habeas petitioner cannot raise new claim for the first time in a response brief); Glover v. Jackson, No. 9:23-cv-3391-SAL, 2024 WL 3042818, at *2 (D.S.C. Jun. 18, 2024) (habeas petitioner cannot raise new grounds in response to a summary judgment motion).

A § 2255 motion "must contain assertions of fact that a petitioner is in a position to establish by competent evidence.  Airy generalities, conclusory assertions and hearsay statements will not suffice."  Haouari v. United States, 510 F.3d 350, 354 (2d Cir. 2007) (ellipses omitted) (quoting United States v. Aiello, 814 F.2d 109, 113 (2d Cir. 1987)).  Moreover, the Court "need not assume the credibility of factual assertions … where the assertions are contraindicated by the record in the underlying proceeding."  Puglisi v. United States, 586 F.3d 209, 214 (2d Cir. 2009).  A § 2255 motion "can be dismissed without a hearing" if "the petitioner's allegations, accepted as true, would not entitle the petitioner to relief."  Engleen v. United States, 68 F.3d 238, 240 (8th

Cir. 1995); see Hill v. Ozmint, 339 F.3d 187, 201 (4th Cir. 2003) (habeas petitioner must allege facts that, if true, would entitle him to relief).

### A. Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Defendant must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). This includes a "'strong presumption' that counsel's strategy and tactics" fall within this range. Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington v. Richter, 562 U.S. 86, 88 (2011).

To establish prejudice, the petitioner must demonstrate there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. It is not sufficient to show the mere "'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1994) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). In considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell,

16

506 U.S. 364, 369 (1993)).  If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

As a threshold matter, Defendant fails to plausibly allege having suffered any prejudice relative to any alleged ineffective assistance of counsel.  That is, Defendant claims that, had he received effective assistance, he would not have pleaded guilty, he would not have answered "no" when asked about promises of leniency at the plea colloquy, and/or he would have moved to withdraw his guilty plea.  In his motion, however, Defendant does not seek to have his plea vacated and to plead anew or to stand trial.  [See Doc. 25 at 24].  Rather, he asks only to be allowed to appeal.[6]  [Id.].  As such, any allegations that he would not have pleaded guilty or would have sought to have his guilty plea withdrawn had he received effective assistance of counsel are unsupported.  See Hill v. Lockhart, 474 U.S. 52, 59 (1985).  Nonetheless, the Court will address each of Defendant's claims.

### 1.      Plea Process

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013).  Effective assistance of counsel at the plea-bargaining stage requires that defense counsel "communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Frye, 566 U.S. at 145.

---

[6] Conversely, when asked at the evidentiary hearing what relief he seeks, Defendant testified that he wants his sentence changed to 72 months and made no mention of wanting to appeal.

17

"[C]ounsel does not have a general duty to initiate plea negotiations." United States v. Pender, 514 Fed. App'x 359, 361 (4th Cir. 2003). When plea negotiations are undertaken, however, defendants are entitled to the effective assistance of counsel during the plea negotiations. Lafler, 566 U.S. at 162-63. "[I]t is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would forego." Libretti v. United States, 516 U.S. 29, 50-51 (1995). Counsel, however, is not ineffective for failing to obtain a plea offer that a defendant is willing to accept. See Weatherford v. Bursey, 429 U.S. 545, 561 (1977) (recognizing "there is no constitutional right to plea bargain"). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill, 474 U.S. at 56 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).

To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007); see Lee, 582 U.S. at 364-65 (the question is whether the defendant would have gone to trial, not whether the result of trial would have been different than the result of the plea bargain). Put differently, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

Courts, however, "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." Lee v. United States, 582 U.S. 357, 369 (2017). Rather, the court should look to "contemporaneous evidence" of his desire to pursue a particular course of action. Id. Cf. United States v. Brown, 137 F.4th 248,

18

254 (4th Cir. 2025) (finding <u>Lee</u> inapplicable in the context of rejected plea deals such that the defendant need not "present 'contemporaneous evidence' to support his claim that he would have accepted the government's plea offer if properly advised").

Defendant makes numerous claims of ineffective assistance of counsel relative to the plea negotiation and agreement process, which largely center on the parties' recommended though rejected 72-month sentence. Defendant asserts that his attorney: (1) failed to explain the importance of having a written agreement containing the Government's 72-month offer; (2) failed to explain that he would be sentenced subject to and the Court would only be presented with the 78- to 97-month guideline range prior to pleading guilty; (3) failed to explain to the Defendant that if he were sentenced to more than 72 months, he would still be bound by his plea and have no right to withdraw it; (4) coerced Defendant into pleading guilty based on the promised 72-month sentence; and (5) failed to explain to the Defendant that the plea colloquy was not just a formality and that he should have truthfully testified that he had been made a promise of a sentence of 72 months in exchange for his guilty plea and that he was "not yet" satisfied with his attorney. [Doc. 25 at 4-6, 11, 13-14]. Defendant contends that these failures rendered his guilty plea unknowing and involuntary, foreclosed his ability to withdraw his guilty plea, and "might have" foreclosed any rights to later challenge his counsel's performance. [<u>Id.</u> at 6, 13].

Although these claims could have been resolved (and denied) on the record as it stood before the hearing in this matter, the Court is even more convinced that Defendant is entitled to no relief. The Court finds Winiker's testimony, as set forth above, credible and dispositive and Defendant's testimony largely incredible. That is, to support his position, Defendants asks the Court to believe: that he reviewed the first plea agreement and understood and advocated for a Rule 11(c)(1)(C) agreement but did not understand or want to understand (c)(1)(B); that he signed

19

the second plea agreement with its key term made pursuant to (c)(1)(B) despite "never" reading the agreement; that Winiker reviewed none of the plea colloquy questions with the Defendant, except for advising him to lie about whether he had been made any promises of leniency or a lighter sentence in exchange for his guilty plea; that Defendant lied to the Magistrate Judge regarding his understanding of the sentencing guidelines and the waiver of his right to withdraw his guilty plea regardless of the sentence imposed based on counsel's advice; that Winiker told him not to worry about the recommended 72-month sentence or the advisory guidelines range in the PSR because Winiker was going to argue for a sentence below 72 months and the Judge "always" agreed with what Winiker put before him; and that Winiker never reviewed or explained the plea process or plea negotiations, the plea colloquy questions, the applicable guidelines range, or the trial process and coerced him into pleading guilty. The Court declines to so find. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) ("[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'").

Rather, the Court finds that Winiker appropriately explained the plea agreement negotiation process and the plea agreement, including the fact that the Court was not bound by the parties' joint recommendation; that Winiker did not coerce Defendant into pleading guilty or promise him that he would be sentenced to 72 months' imprisonment; that Winiker explained that Defendant's sentence was ultimately up to the Court at sentencing; that Winiker explained the sentencing guidelines and advised the Defendant that he was subject to them and that the Court could impose

a sentence higher or lower than the sentence recommended by the guidelines; that Winiker explained and reviewed the plea colloquy questions with the Defendant such that Defendant's responses were knowing and voluntary; and that Defendant understood before pleading guilty that he was waiving any right to withdraw his guilty plea, even if his sentence were more severe than expected.

Defendant also complains that Winiker should have advised him to testify at the plea colloquy that he was not satisfied with his attorney's services so as to not foreclose future challenges to his attorney's performance. This claim is without merit. Defendant testified at the hearing here that he was not dissatisfied with his attorney's services until he was sentenced to 84-months' imprisonment, which occurred after the plea colloquy. Moreover, this plea colloquy testimony does not preclude any claims of ineffective assistance of counsel either on direct appeal or collateral review in any event.

For these reasons, the Court denies and dismisses Defendant's claims of ineffective assistance of counsel relative to the plea negotiations, the plea agreement, and the plea colloquy process, including any claim Defendant purports to make based on whether his guilty plea was knowing and voluntary, as further set forth above.

### 2. Withdrawal of Guilty Plea

Defendant also contends that his attorney was ineffective for: (1) failing to advise the Defendant regarding any rights he may have to withdraw his guilty plea, and (2) failing to move the Court to withdraw Defendant's guilty plea after sentencing. [Doc. 25 at 8-10]. Defendant claims that there is a reasonable probability that the Court would not have sentenced Defendant to 84 months and/or would have allowed Defendant to withdraw his guilty plea had counsel moved

to withdraw Defendant's plea, knowing that Defendant did not get what he was promised. [Id. at 9-10].

These claims fail. To begin, Defendant had no right to withdraw his guilty plea under the circumstances and any motion to do so would have been futile. Defendant waived any limited right to withdraw his guilty plea when he signed the plea agreement, which the Magistrate Judge accepted after finding Defendant's guilty plea knowing and voluntary. Moreover, Defendant's plea agreement plainly set out this waiver and the fact that Defendant would have no right to withdraw the plea as the result of the sentence imposed. Additionally, during the plea colloquy Defendant affirmed that he understood that he would be bound by and have no right to withdraw his plea even if his sentence were more severe than expected or the Court did not accept the sentencing recommendation. In this regard, Defendant now asks the Court to disregard this testimony and believe that he did not so understand and that he lied to the Magistrate Judge during the plea colloquy, which the Court will not do. Finally, in light of the Court's determinations supra, there is no reasonable probability that the Court would have allowed Defendant to withdraw his guilty plea had it known of the alleged, though unsubstantiated, promise a lighter sentence. The Court, therefore, will deny and dismiss Defendant's motion based on these grounds.

### 3. Issues Related to Appeal

Defendant argues that his attorney was ineffective for: (1) failing to object to Defendant's 84-month sentence to preserve the issue of the lost agreement for appeal, (2) failing to discuss appealable issues with the Defendant, (2) and failing to file a notice of appeal from Defendant's sentence and counsel's performance on Defendant's express instruction to do so, but instead moving to withdraw from the case. [Doc. 25 at 8-9, 15]. Defendant alleges only that he "may have prevailed on appeal" and been resentenced to 72 months. [Id. at 9].

It is well-settled that when a defendant clearly instructs his attorney to file a notice of appeal from a criminal judgment, the failure to file the notice of appeal constitutes *per se* ineffective assistance of counsel. That is, the defendant is presumed to have suffered prejudice no matter the potential merits of his claims for relief or whether he has waived his appellate rights, as Defendant has done through his written plea agreement in this case. See Evitts v. Lucey, 469 U.S. 387, 391-405 (1985); United States v. Poindexter, 492 F.3d 263, 269 (4th Cir. 2007).

The Court again finds Defendant's testimony on this issue incredible and Winiker's credible and determinative. The Court finds that Winiker asked the Defendant very shortly after the sentencing hearing whether Defendant wanted to appeal and that Defendant declined. The Court further finds that Winiker sent Defendant a copy of the Judgment when it was entered and advised the Defendant that he had fourteen days to notify Winiker if he wanted to appeal and that Defendant failed to act. Moreover, it is not ineffective assistance to decline to raise meritless objections or to discuss meritless issues on appeal. Because Winiker did not fail to file a notice of appeal on Defendant's instruction to do so or otherwise act ineffectively relative to an appeal, the Court will deny and dismiss Defendant's claim on this ground.

### 4. Cumulative Error

Finally, Defendant contends that counsel committed multiple errors, rendering his assistance ineffective and together prejudicing Defendant's right to "a full and fair prosecution" and without which Defendant would not have received an 82-month sentence. [Doc. 25 at 16]. Claims of ineffective assistance are not subject to cumulative error review. Fisher v. Angelone, 163 F.3d 835, 852-53 (4th Cir. 1998) (claims of ineffective assistance of counsel must be evaluated individually, not cumulatively). The Court, therefore, will also dismiss this claim.

23

In sum, because Defendant has not shown deficient performance or prejudice, his claims of ineffective assistance of counsel will be denied.

**B.  Prosecutorial Misconduct**

Defendant also seeks relief under § 2255 for alleged prosecutorial misconduct.  [Doc. 25 at 17].  He asserts that the Government presented the 72-month sentence as the actual sentence Defendant would receive, not as a recommendation, and failed to make the 72-month sentence a term of the written plea agreement.  [Id.].

The Court reviews claims of prosecutorial misconduct "to determine whether the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Sheetz, 293 F.3d 175, 186 (4th Cir. 2002) (internal quotation marks and citation omitted).  In so deciding, the Court considers: (1) whether the prosecutor's conduct was in fact improper, and (2) whether the prosecutor's conduct "prejudicially affected [the defendant's] substantial rights so as to deprive him of a fair trial."  Id. (citing United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993)).

Defendant has plainly failed to meet this standard.  Defendant has not shown nor did the hearing testimony support any improper conduct by the Government.  Rather, the plea agreement plainly and unequivocally recited the parties' agreement to recommend a sentence of 72 months under Rule 11(c)(1)(B), and the Government so advocated at sentencing.  Moreover, even if the Government's conduct had been improper, which it was not, Defendant has not shown that any such conduct prejudiced his substantial rights.  The Court, therefore, will also deny and dismiss this claim for relief.

**V.  CONCLUSION**

24

For the foregoing reasons, the Court grants the Government's motion to dismiss and denies and dismisses Defendant's Section 2255 petition.

The Court further finds that Defendant has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)). Defendant has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the motion to vacate states a debatable claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. at 484-85. As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Government's Motion to Dismiss [Doc. 33] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 25] is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.

**IT IS SO ORDERED**.

Signed: June 23, 2026

Kenneth D. Bell
United States District Judge